UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALEXIS BRAVARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-02228-SEB-MG |
| | ) | |
| BARTH ELECTRIC CO INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Dkt. 34]. Plaintiff Alexis Bravard has brought this action against Defendant Barth Electric Co. Inc. ("Barth Electric"), alleging that, while a temporary employee on assignment at Barth Electric, she was subjected to unlawful sexual harassment and discriminated against because of her disability and was subsequently removed from her assignment because of her disability and in retaliation for having complained about the sexual harassment, all in violation of Title VII of the Civil Rights Act of 1965 ("Title VII") and the Americans with Disabilities Act ("ADA"). For the reasons detailed below, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.

**<u>Factual Background</u>**

**General Background**

Barth Electric is a business that provides electrical construction services, including the design and installation of electrical systems, throughout Central Indiana. At all times relevant to this litigation, Ms. Bravard was employed by the staffing agency ADO

1

Professional Solutions, Inc. d/b/a LHH Recruitment Solutions ("LHH").  Bravard Dep. at 10.  On June 12, 2023, LHH placed Ms. Bravard on temporary assignment[1] with Barth Electric[2] as a dispatcher.  *Id.* at 98.  For the duration of her assignment to Barth Electric, Ms. Bravard's direct supervisor was Barth Electric employee, Kurt Smith.

**Plaintiff's Complaint of Sexual Harassment**

In August 2023, approximately two months after Ms. Bravard's dispatcher duties began, Barth Electric hired B.P.[3] as an account manager in its service department.  B.P. Dep. at 6.  B.P. and Ms. Bravard were considered co-workers, and B.P. had no supervisory authority over Ms. Bravard.  Bravard Dep. at 12; B.P. Dep. at 8; B.P. Aff. ¶ 21.  Ms. Bravard's assigned desk at Barth Electric was located in a common area immediately adjacent to a large square interior window that looked into B.P.'s office, with B.P.'s desk facing the window.  B.P. Dep. at 8–12; Smith Dep. at 16–17, 18.  Mr. B.P.

---

[1] In her briefing, Ms. Bravard claims that she was told when she started working for Barth Electric that, if she performed well, she would be hired by the company as a permanent employee after 90 days.  In support of this assertion, Ms. Bravard cites the complaint and her deposition testimony.  However, the complaint is not verified and thus does not provide evidence applicable to summary judgment.  In her deposition, she references her attempts to seek advice regarding how to secure a permanent position, (Bravard Dep. at 97, 120), but has adduced no evidence establishing that anyone from Barth Electric ever told her that she would be hired for a permanent position after 90 days.

[2] Barth Electric does not dispute that for purposes of this action, it is considered an "employer" of Ms. Bravard under the relevant statutes.  *See, e.g., English v. Beacon Roofing Supply, Inc.*, No. 1:14-cv-00089-SEB-TAB, 2015 WL 3485637, at *1 n.1 (S.D Ind. June 1, 2015) (recognizing that joint employer theory applied to staffing agency and company to which the plaintiff was temporarily assigned); *Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003) ("This court concludes that the joint employer theory should apply in cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which he or she is assigned, where that employer exerts a significant amount of control over the individual.").

[3] In light of the ultimately unsubstantiated, potentially embarrassing behavior attributed to B.P. by Plaintiff, henceforth in this order, we will refer to him by his initials only.

utilized two computer monitors on his desk, one of which was positioned in front of the large window.  Although the window had blinds and was partially obstructed by a map of Indiana on Ms. Bravard's side, Ms. Bravard testified that the window blinds were always open and that the map did not block her view of B.P.  Bravard Dep. at 21, 22–23, 139.  Ms. Bravard further testified that the window computer monitor was attached to its base by an adjustable stem set at a minimum height of several inches, which allowed B.P. and Ms. Bravard to view each other's torsos beneath the monitor.  Thus, depending on how high the monitor was positioned, at times it permitted them to see each other's faces.  *Id.* at 20–22.

Approximately one month after B.P. was hired, Ms. Bravard began observing him while he was seated at his desk with the upper part of his right arm shaking while his hand was underneath his desk.  Based on this view of B.P.'s arm movements, Ms. Bravard believed that he was masturbating at his desk, although she never saw his exposed genitals.  Bravard Dep. at 11–12, 15.  Ms. Bravard testified that at times she heard sounds of pornography emanating from B.P.'s office and frequently observed B.P. staring at her while engaged in what she believed to be acts of self-gratification, which made her uncomfortable.  *Id.* at 12, 18–19, 23–24.  According to Ms. Bravard, B.P. masturbated in this manner "throughout the day" and "every single day" during the time she was assigned to Barth Electric, to wit, from October all the way "up until [her] last day."  Bravard Dep. at 14–15, 135, 211.  She further testified that she witnessed B.P. to "zip up his pants in front of [her], [and] in front of the blinds as well."  *Id.* at 12.

Ms. Bravard took six short videos with her cell phone that captured a portion of B.P.'s right arm, from mid-shoulder to mid-forearm, while rhythmically shaking as the remaining portion of his forearm and hand were under his desk.  Exh. K (cell phone videos).  B.P.'s face is not visible in any of the videos and no audible pornographic sounds were recorded.  Ms. Bravard has testified that these videos accurately depict what she witnessed, with the caveat that she could "see[] a little better in person than with [her] phone" and that "sometimes it would be a little more intense or [she] could see his arm going harder than" what is depicted in the videos.  *Id.* at 127; Exh. K.

Barth Electric's employee handbook prohibits sexual harassment and sets forth a complaint procedure for reporting such harassment, of which procedure Ms. Bravard was aware during her employment.  Bravard Dep. at 92–93; Exh. O (Barth Electric handbook).  On October 27, 2023, Ms. Bravard approached Mr. Smith (located in the Service Department office space) to inform him that B.P. was "jacking off" in his office.  Smith Aff. ¶ 16; Smith Dep. at 21, 26.  Ms. Bravard texted the six videos she had taken of B.P. to Mr. Smith's cellphone along with the following messages: "[h]e was just doing it literally before you guys walked up out there" and "I see [D]eb[,] I don't see you but he was just doing it if you're out there also."  Dkt. 36-8.  According to Ms. Bravard, Mr. Smith responded, "being [B.P.]'s age, he's probably not masturbating all the time, and it's probably just a nervous twitch."  Bravard Dep. at 37, 38.  Mr. Smith reported Ms. Bravard's complaint to Human Resources, as was his practice with every complaint he received, and he reviewed the videos with Barth Electric's CFO and Human Resources Manager Deb Sawyer.  Smith Dep. at 20, 26; Smith Aff. ¶ 17.

4

A few weeks prior to Ms. Bravard's complaint about B.P.'s conduct, B.P. had informed Mr. Smith that he suffered from a severe case of carpal tunnel syndrome in his right arm and needed to "shake out" his arm and hand throughout the day to alleviate the pain and numbness associated with this condition.  B.P. Dep. at 17; Smith Dep. at 33; Smith Aff. ¶¶ 14–15; B.P. Aff. ¶¶ 13–14.  Around this same time, B.P. also mentioned his condition and the need to shake out his arm to Peggy Johnson, an administrative assistant at Barth Electric whose desk was near B.P.'s and Ms. Bravard's, after witnessing Ms. Johnson engaging in similar carpal-tunnel symptom alleviation motions.  B.P. Dep. at 24–25; Johnson Aff. ¶¶ 6–16; B.P. Aff. ¶¶ 15–16.

Having knowledge of B.P.'s condition, Mr. Smith determined after reviewing the videos with Ms. Sawyer that the conduct depicted in the videos was consistent with B.P. "flexing his wrist and shaking his hand and arm back and forth to relieve the pain, numbness, and tingling he was experiencing from his carpal tunnel syndrome."  Smith Aff. ¶ 19; *accord* Smith Dep. at 33, 50, 52, 96.  Mr. Smith acknowledged that "there was enough there [in the videos] that if you had an active imagination, that you [could] interpret it being anything you wanted," but noted that the videos showed "no sign of [B.P.] with his pants down" and "no reveal of a penis."  Smith Dep. at 26.  Mr. Smith and Ms. Sawyer instructed Ms. Bravard to alert them the next time she observed B.P. engaging in this conduct so that Mr. Smith and Ms. Sawyer could "go out and try to catch [him] in the act."  *Id.* at 27.  Mr. Smith also informed Ms. Bravard that, prior to lodging her complaint, B.P. had told him of his carpal tunnel syndrome and related arm motion. *Id.* at 32.

5

Shortly after submitting her October 27 complaint, Ms. Bravard told Mr. Smith that B.P. was masturbating again.  Mr. Smith and Ms. Sawyer responded immediately by coming to the area outside B.P.'s office, but the trek took them five minutes, by which point B.P. was no longer making any sort of arm motion.  Smith Dep. at 22, 27.  According to Ms. Bravard, neither Mr. Smith nor Ms. Sawyer followed up with her regarding their observations.  Bravard Dep. at 152–53.  After B.P. continued to engage in what Ms. Bravard believed to be masturbation on subsequent occasions, she emailed Ms. Sawyer to request a one-on-one meeting, without specifying the precise subject she wished to discuss.  Though Ms. Sawyer initially informed Ms. Bravard that they could meet the next day, she ultimately never met with her.  Bravard Dep. at 40.  After Ms. Bravard reported to Mr. Smith that Ms. Sawyer had failed to meet with her, Mr. Smith took no action in response beyond suggesting that Ms. Bravard "reach out to her again" to see if "she ha[d] time to meet" with Ms. Bravard.  Smith Dep. at 61.  Ms. Bravard testified that at this point she "gave up" and submitted no further complaints regarding her observations of B.P.'s conduct.  Bravard Dep. at 160–61.

Mr. Smith's oversight of this matter was, at best, cursory, at worst superficial.  He never requested a written statement from Ms. Bravard, documented any portion of his investigation, notified B.P. of Ms. Bravard's complaint, or interviewed him about the allegations, despite Barth Electric's policy requiring all parties to a sexual harassment complaint be given notice and due process.  Smith Dep. at 21, 27–28, 29, 31, 32, 62.  In addition, Mr. Smith testified that he never considered taking any specific action in response to Ms. Bravard's complaint, such as moving B.P.'s desk, switching him to

another office, closing the blinds between the offices, changing Ms. Bravard's schedule, or making any other attempts to distance Ms. Bravard from B.P.. *Id.* at 36–37, 62–63. Nor did Mr. Smith ever request of Barth Electric's Information Technology department that a check be run on B.P.'s internet history, in an attempt to determine whether any other employees had observed similar behavior, or convene a staff meeting or training session to remind employees of the company's sexual harassment policies. *Id.* at 37, 42, 64.

**Plaintiff's Asthma and Request for Keycard**

Ms. Bravard reportedly suffers from asthma, which condition causes "wheezing" that impairs her from doing "normal things," including "[w]alking a distance, going up stairs, [and] lifting." Bravard Dep. at 60–61. When she began working for Barth Electric, Ms. Bravard was required to park on the opposite side of the building and walk through the warehouse to get to her desk. *Id.* at 50. Ms. Bravard testified that there were days when she would "wheeze[] the whole way in" and "had to get [her] inhaler out immediately because [she] was having trouble breathing with that long walk." *Id.* at 61. Another entrance to the building was closer to her workspace but required a key card to access. *Id.* at 50. According to Ms. Bravard, her co-worker, Kimya Majors, who was also a temporary employee but had been working for Barth Electric longer than Ms. Bravard, had been issued a key card, and Ms. Majors suggested that Ms. Bravard should request one too. *Id.* at 54. After approximately six months, Ms. Bravard was given a key card by another Barth Electric employee, Jared Phillips. Smith Dep. at 87–88.

Upon learning that Ms. Bravard had been given a key card, Mr. Smith quickly confiscated it because Barth Electric did not issue key cards to temporary employees.

7

Smith Dep. at 88.  Ms. Bravard claims that she then asked Mr. Smith if she could have a key card because the walking "is a lot" with her asthma and the key card would help her. Bravard Dep. at 78.  Mr. Smith denied her request, informing Ms. Bravard of Barth Electric's practice not to issue temporary workers key cards.  *Id.*; Smith Dep. at 88. According to Mr. Smith, in connection with her request for a key card, Ms. Bravard did not provide any specific reason she needed one and never stated that it was to alleviate her asthma.  Smith Dep. at 87–88.

**Plaintiff's Attendance Issues**

Beginning during the first 30 days of her assignment with Barth Electric and continuing throughout her tenure, Ms. Bravard was either tardy or absent from work multiple times each month.   Throughout her assignment with Barth Electric, prompted by reports from Mr. Smith, LHH raised numerous concerns with Ms. Bravard regarding her attendance and/or tardiness, including as early as August 2023, which was approximately two months into her assignment.  Despite LHH's interventions, Ms. Bravard continued to be tardy or absent on the following (non-exhaustive) occasions:

| Date | Reason Provided | Notification | Result |
|------|-----------------|--------------|--------|
| July 7, 2023 | Sore throat | Texted Mr. Smith less than 60 minutes before work | Did not attend work |
| July 13, 2023 | Lunch ran late | Texted Mr. Smith after work resumed | Returned to work late from lunch |
| August 3, 2023 | Sick | Texted Mr. Smith less than 30 minutes before work started | Did not attend morning shift; worked in the afternoon |
| August 22, 2023 | None provided | Texted Mr. Smith | Late return from lunch |

| August 29, 2023 | Medical issue | Texted Mr. Smith | Did not attend work |
| September 12, 2023 | Family emergency | Texted Mr. Smith | Did not attend work |
| September 20, 2023 | Traffic | Texted Mr. Smith less than 5 minutes before work started | Late to work |
| September 25, 2023 | Car issues | Texted Mr. Smith less than 10 minutes before work started | Late to work |
| October 6, 2023 | Potential health issue | Texted Mr. Smith less than 30 minutes before work started | Did not attend work |
| October 16–17, 2023 | Grandfather was sick | Texted Mr. Smith less than 60 minutes before work started | Did not attend work |
| October 20, 2023 | Sick | Texted Mr. Smith less than 30 minutes before work | Did not attend work |
| October 26, 2023 | Long Starbucks line | Texted Mr. Smith 1 minute before work started | Late to work |
| October 30, 2023 | Car issues | Texted Mr. Smith less than 60 minutes before work started | Late to work |
| November 27–28, 2023 | Sick | Texted Mr. Smith less than 60 minutes before work started | Did not attend work |
| December 5, 2023 | Needed gas | Texted Mr. Smith after work started | Late to work |
| December 12, 2023 | Traffic | Texted Mr. Smith 3 minutes before work started | Late to work |
| December 12–17, 2023 | Sick with COVID | Texted Mr. Smith an image of two positive tests | Did not attend work |
| December 19, 2023 | Had to drop off niece | Texted Mr. Smith less than 30 minutes before work started | Late to work |
| December 20, 2023 | None given | Texted Mr. Smith after work started | Late to work |

| December 22, 2023 | None given | Texted Mr. Smith less than 30 minutes before work started | Did not attend work |
|---|---|---|---|
| January 9, 2024 | Family emergency | Texted Mr. Smith approximately 60 minutes before work started | Did not attend work |
| January 10, 2024 | Mother was sick | Texted Mr. Smith approximately 60 minutes before work started | Did not attend work |
| January 19, 2024 | Car trouble | Texted Mr. Smith less than 30 minutes before work started | Did not attend work |

Exh. H; Bravard Dep. at 69–72, 74–75, 100–106, 108–109, 111–117.

Ms. Bravard does not deny that she was late and/or absent on the dates listed above but maintains that on the days that she was tardy, it was hardly ever by more than a few minutes and that, on several of the days she was absent, it was because of her asthma and/or her distress caused by B.P.'s conduct. Ms. Bravard concedes that her attendance issues had a "negative impact" on her work/workplace and that "it wasn't positive, that's for sure." Bravard Dep. at 117–118. Mr. Smith testified that Ms. Bravard's attendance was the "driving force" behind his concerns regarding her performance, (Smith Dep. at 93), which concerns he expressed to LHH on several occasions, as early as August 25, 2023, and again on October 30, 2023, when he suggested that a replacement might be necessary due to Ms. Bravard's absenteeism. Ultimately, he decided to forego termination of her employment at that time. Exh. I at BARTH-000443–000449, BARTH-000465.

**The Termination of Plaintiff's Assignment with Defendant**

On Monday, January 22, 2024, Ms. Bravard awoke at 3:00 a.m. with breathing problems.  At 1:47 p.m. that afternoon, she presented to an emergency department for treatment for her increased asthma symptoms.  Upon arrival, she was alert and oriented.  She was treated with a nebulizer and prescribed a steroid and inhaler refill and was discharged at 4:59 p.m. with no work restrictions.  Bravard Dep. at 161, 166, 172–73.  Ms. Bravard sent LHH a text at 12:41 p.m. that day, an hour prior to her admission to the hospital, stating that she was at the hospital due to an asthma attack.  Exh. J at BARTH-001182; Bravard Dep. at 167.  At 5:51 p.m., following her discharge, Ms. Bravard messaged LHH to inquire whether Barth Electric wanted her to return to her workplace, informing her recruiter that she had a pulmonologist appointment the next day, on January 23, but had been cleared to return to work on January 24.  Exh. J at BARTH-001183.  Ms. Bravard later testified that she did not visit the doctor on January 23, choosing instead to just stay home to rest.  Bravard Dep. at 174–75.

Although Ms. Bravard routinely notified Mr. Smith of her planned absences, she did not notify anyone at Barth Electric of her January 22 hospital visit or otherwise report the reason for her absence from work at any point that day.  *Id.* at 166–67.  Accordingly, Mr. Smith considered Ms. Bravard's absence on January 22 a no-call/no-show, emailing LHH at 7:45 a.m. that morning to request that LHH begin the process of identifying a replacement for Ms. Bravard based on her failure to show up for work that day as well as her three previous absences earlier that month, on January 9, 10, and 19.  Smith Dep. at 89–90; Exh. I at BARTH-000460.

At 8:04 a.m. on January 23, LHH informed Mr. Smith for the first time that Ms. Bravard had been absent the day before because she had been in the hospital due to an asthma attack but was authorized to report to work on January 24. Smith Dep. at 89; Exh. I at BARTH-000456. Mr. Smith responded that this information "changes a lot in my view" and gave his approval for Ms. Bravard to return to work at Barth Electric the following day. *Id.* LHH, in turn, notified Ms. Bravard that Barth Electric "said you are ok to return to work tomorrow [January 24, 2024]." Exh. J at BARTH-001184. However, Ms. Bravard did not report to work at Barth Electric on January 24 and did not notify Mr. Smith that she would again be absent that day. Bravard Dep. at 183; Smith Dep. at 89–90; Exh. I at BARTH-000454.

On the morning of January 24, Mr. Smith advised LHH the Ms. Bravard was a "[n]o call-no show today. Let's end her assignment with us at the end of the day today and start looking for a replacement." Exh. I at BARTH-000454. At 2:47 p.m., Ms. Bravard texted Mr. Smith that she was in the hospital and anticipated being released to return to work the next day; she sent a similar message to LHH. Bravard Dep. at 180–82; Exh. H at BARTH-000119; Exh. J at BARTH-001184. After receiving Ms. Bravard's message, Mr. Smith messaged LHH at 3:08 p.m., "Let's keep [Ms. Bravard] but let's keep exploring other options until then." Exh. I at BARTH-000452. However, unbeknownst to Mr. Smith, LHH had already informed Ms. Bravard at 3:02 p.m. that her assignment with Barth Electric had been terminated. Exh. J at BARTH-001184. At 3:10 p.m., LHH messaged Mr. Smith, "We just called [Ms. Bravard] and told her [her] assignment has ended per your instructions. Would you like us to call her back and tell her to go ahead

12

and come in tomorrow?" *Id.* at BARTH-000452.  At 3:20 p.m., Mr. Smith responded, "It[']s too late … bringing her back after telling her it was over may create more issues than it[']s worth." *Id.* at BARTH-000451.

**Plaintiff's EEOC Charge and the Instant Complaint**

Following the termination of her assignment to Barth Electric, Ms. Bravard filed an EEOC charge on February 3, 2024.  Exh. L.  In her charge, she alleged that Barth Electric had fostered a hostile work environment by allowing her to be sexually harassed by B.P. and then retaliating against her by terminating her assignment because of her reports of sexual harassment.  *Id.*  With regard to her disability, she alleged that she suffers from asthma, and, on January 22, 2024, she had had a severe asthma attack that required inpatient treatment at the hospital and, when she provided documentation of her hospitalization to Barth Electric,[4] the company informed LHH that she was no longer needed.  *Id.*  Based on these facts, she alleged in her EEOC charge that Barth Electric had discriminated against her "based on her disability by refusing to accommodate her need for leave during her asthma attack and instead, opting to end her assignment because of time she missed due to her asthma attack." *Id.*

On December 17, 2024, Ms. Bravard filed her judicial complaint, alleging claims of sexual harassment and retaliation in violation of Title VII and disability discrimination in violation of the ADA.  Now before the Court is Barth Electric's motion for summary judgment on these claims, which motion is fully briefed and ripe for ruling.

---

[4] In her deposition, Ms. Bravard conceded that she did not have documentation of her January 24 hospitalization.

## Legal Analysis

### I.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II.  Discussion

Ms. Bravard alleges that Barth Electric is liable under Title VII for failing to adequately address B.P.'s sexual harassment and for retaliating against her for complaining of the sexual harassment by failing to hire her as a full-time employee, denying her request for a key card, and terminating her assignment.  Ms. Bravard also contends that Barth Electric violated the ADA by discriminating against her because of her disability when it terminated her assignment because she missed work while she was in the hospital receiving treatment for an asthma attack.  Barth Electric seeks summary judgment on each of Ms. Bravard's claims.

### A.        Title VII Sex Harassment/Hostile Work Environment Claim

To succeed on a claim for sexual harassment under Title VII, a plaintiff must prove that "(1) she endured unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile work environment; and (4) there is a basis for employer liability." *Nischan v. Stratosphere Quality, LCC*, 865 F.3d 922, 928 (7th Cir. 2017) (citation omitted). The work environment must be both subjectively and objectively "hostile," meaning that "a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000) (citations omitted).

Here, because neither party argues that B.P. was at any point Ms. Bravard's supervisor, Barth Electric "is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). This means that "[a]n employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (citation modified). In assessing an employer's response, the "focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 637 (7th Cir. 2009) (citation omitted).

Barth Electric argues that it is entitled to summary judgment on Ms. Bravard's sex harassment claim because B.P.'s conduct was not objectively hostile, and, even if it were,

15

there is no basis for employer liability because Mr. Smith and Ms. Sawyer acted reasonably in addressing Ms. Bravard's allegations.  We address these arguments in turn below.

"In determining whether a workplace is objectively hostile, we consider the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)).  The Seventh Circuit has described the severity of sexual harassment as falling on a spectrum, identifying the more severe harassment as "sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations, intimidating words or acts; obscene language or gestures; pornographic pictures," and the less severe as "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (internal citation omitted).

Here, the videos taken by Ms. Bravard do not provide conclusive evidence supporting her interpretation of what they depict.  A reasonably jury viewing them could conclude, as Barth Electric did, that they depict Mr. B.P.'s efforts to alleviate his carpel tunnel symptoms by shaking his arm.  A reasonable jury could also find that the conduct depicted in the videos more closely aligns with Ms. Bravard's interpretation, particularly if they credit her testimony that B.P. would "zip up his pants" in front of her (Bravard Dep. at 12), that she heard sounds of pornography emanating from B.P.'s office "from

16

time to time" during these episodes (*id.* at 23–24), and that "more times than not" she observed B.P. staring at her over his computer screen while engaged in these movements (*id.* at 18).  However, the arm movements captured therein are at the very least "ambiguous," as Barth Electric characterizes them.  Dkt. 46 at 9.  If Ms. Bravard's interpretation is true, a co-worker's persistent and repeated masturbation and/or simulation of masturbation, occurring multiple times per day over several months and often accompanied by the sounds of pornography and intentional eye contact, would be both pervasive and sufficiently severe to be objectively offensive.  *See*, *e.g.*, *Davis v. Packer Engineering, Inc.*, No. 11-cv-07923, 2018 WL 1784131 (Apr. 12, 2018) (holding that jury had legally sufficient basis to find for a plaintiff on hostile work environment claim that was "supported primarily by evidence that she heard and saw a male co-worker watching pornography and masturbating in his glass-walled office during the work day, over the course of many months and often several times a day" and that the jury was entitled to weigh conflicting evidence showing that the co-worker may not have actually been masturbating against the plaintiff's credibility, coupled with videos and photographs of the conduct).  Accordingly, Ms. Bravard has satisfied her burden to establish that a reasonable jury could conclude that her work environment was objectively hostile.

With regard to employer liability, Barth Electric argues that Mr. Smith and Ms. Sawyer acted reasonably in addressing Ms. Bravard's October 2023 sexual harassment complaint when they reviewed the videos and told her that they believed that the arm movements depicted therein were indicative of B.P.'s efforts to alleviate his carpel tunnel symptoms, not masturbation, and instructed her to alert them if anything further occurred.

When Ms. Bravard shortly thereafter did report that B.P. was again masturbating, Mr. Smith and Ms. Sawyer responded promptly to B.P.'s office to observe him, but whatever he was engaged in had stopped by the time they arrived and the only behavior they observed was his typing at his computer.  Mr. Smith testified by affidavit that in the course of his duties he frequently walked throughout the Service Department during the workday, including in and around B.P.'s office, and on no other occasion did he observe conduct that would suggest that B.P. was engaged in masturbation in the workplace. Smith Aff. ¶ 23.  According to Barth Electric, because Ms. Bravard never again complained of such conduct by B.P., Mr. Smith and Ms. Sawyer had no notice that any additional intervention was required.

Ms. Bravard argues that Barth Electric's response to her sexual harassment complaint was unreasonable in that it failed to take any action to address her allegation, including failing to notify B.P. of the complaint itself (as Barth's policies required) or to question him, to interview any other employees, to check B.P.'s internet history, or to take any preventative steps to put distance between the two of them such as moving workspaces or instructing B.P. to close his blinds.  When Ms. Bravard subsequently reported that B.P. was continuing to engage in this highly offensive conduct, she contends that Mr. Smith and Ms. Sawyer failed to follow up with her by informing her of the steps they took in response to her report.

Barth Electric's investigation into Ms. Bravard's complaint no doubt could have been more robust.  Nonetheless, we cannot say that the company acted negligently in response to her allegations.  *Vance*, 570 U.S. at 424 (holding that an employer is liable for

co-worker harassment "only if it was negligent in controlling working conditions").  On the record before us, we find no indication that Ms. Bravard shared with Mr. Smith and Ms. Sawyer her view that B.P.'s arm movements had been accompanied by the "sounds" of pornography (whatever that might be), that he watched her while engaged in making those arm motions, or that she ever witnessed him zipping up his pants.  The only information that Barth Electric was given was Ms. Bravard's characterization of the arm movements, B.P.'s prior report that to alleviate his serious carpel tunnel symptoms he needed to shake out his arms several times per day, and the videos, which show only ambiguous, inconclusive arm movements.  Given these circumstances, we cannot say that Barth's response in explaining what it knew about B.P.'s medical condition to Ms. Bravard and instructing her to alert her supervisors if anything more occurred was unreasonable.  When Ms. Bravard thereafter reported that B.P. was again engaging in the same offensive conduct, Mr. Smith and Ms. Sawyer attempted to observe him but ultimately were unable to confirm any such concerning behavior.  Thereafter, Ms. Bravard reported no other issues with B.P. to them,[5] so Barth Electric was not on notice that its response had failed to remedy the situation.  No reasonable jury could find to the contrary.  Because Ms. Bravard has failed to establish a basis for employer liability, her sexual harassment claim cannot survive summary judgment.

---

[5] Ms. Bravard testified that she later attempted to meet with Ms. Sawyer regarding B.P.'s behavior but concedes that she had not revealed what she wanted to discuss so Barth Electric would not have been on notice that the problem was continuing.

**B.** **Title VII Retaliation Claim**

Ms. Bravard next claims that, following her complaints of sexual harassment, Barth Electric retaliated against her by failing to hire her as a permanent employee, denying her request for a key card, and terminating her assignment. It is unlawful "for an employer to discriminate against any of [its] employees … because [s]he has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C. § 2000e-3(a). To survive summary judgment on a Title VII retaliation claim, a plaintiff must be able to establish that "[s]he engaged in a protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (2017). There is no dispute that Ms. Bravard engaged in protected activity in October 2023 when she reported Mr. B.P.'s conduct to Mr. Smith. Barth Electric maintains that it is entitled to summary judgment on her retaliation claim, however, because she cannot establish that she suffered an adverse employment action and/or that a causal link exists between her complaints and any such adverse action. We address Ms. Bravard's retaliation theories in turn below.

**1. Failure to Hire for Permanent Position**

To the extent that Ms. Bravard's retaliation claim rests on her failure to be offered a permanent, full-time position by Barth Electric after 90 days, that theory cannot survive summary judgment because she has presented no admissible evidence that Barth Electric ever promised her such an opportunity before she complained of sexual harassment and that it thereafter withdrew that promise. She cites only her complaint along with portions of her deposition testimony to support her claim that she was told at the outset of her

20

assignment with Barth Electric that she would be considered for a permanent position if she performed well during the first 90 days of her temporary assignment.

In response, we begin with the fact that "[i]t is well-established … that pleadings are not evidence unless they are verified and that district courts may only consider admissible evidence when determining summary judgment motions." *Warner Bros. Ent., Inc. v. Synergex Corp.*, No. 12 C 8483, 2014 WL 518085, at *3 (N.D. Ill. Feb. 10, 2014) (citing *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) ("A verified complaint is the equivalent of an affidavit for summary judgment purposes."); *accord McCullough v. CitiMortgage, Inc.*, No. 3:18-CV-653, 2019 WL 4695522, at *3 (N.D. Ind. Sept. 26, 2019) ("[P]leadings are not evidence at summary judgment.").  Ms. Bravard did not personally sign or verify her complaint; accordingly, her complaint is not verified and does not constitute evidence on which she can rely in opposing summary judgment.

Nor does Ms. Bravard's deposition testimony support her claim that she was promised a permanent position by Barth Electric when she first began her assignment. Rather, the cited portions of Ms. Bravard's deposition testimony establish only that on one occasion she asked her LLH recruiter what he "suggested for [her] to try to get hired," (Bravard Dep. at 120), and that she had shared with her boyfriend that she "thought [she] was going to get hired," after she received a text message from Mr. Smith telling her that she had done a good job. *Id.* at 97.  Ms. Bravard never testified, however, that anyone from Barth Electric had ever told her that she was entitled to be considered for a permanent position after 90 days in her temporary assignment.  Accordingly, she has failed to designate any evidence from which a reasonable jury could conclude that her

failure to be offered a permanent position after working for Barth Electric for 90 days was because of her complaints of sexual harassment. This claim dies for want of such evidentiary support.

### 2. Confiscation of Key Card

Next, Ms. Bravard claims that Barth Electric retaliated against her for complaining of sexual harassment by confiscating the unauthorized key card she had obtained from a co-worker, which allowed her access to a building entrance nearer to her desk than the entrance accessible without a key card. Ms. Bravard does not argue that she was unable to complete the longer walk or that she required the key card as an ADA accommodation, only that having it "really helped" because the walk was "a lot" with her asthma. Bravard Dep. at 78. Under Seventh Circuit law, an adverse employment action must be material, meaning "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). It is an objective inquiry that requires an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (citation omitted). Here, even crediting Ms. Bravard's testimony about her asthma, being required to walk a slightly longer distance to one's desk does not rise beyond the type of "petty slight[] or minor annoyance[]" deemed not to constitute a material adverse employment action under Seventh Circuit law. *Lesiv v. Ill. Central Railroad Co.*, 39 F.4th 903, 911–12 (7th Cir. 2022). Ms. Bravard has failed to put forth any developed argument otherwise. This claim is also a nonstarter.

22

### 3. Termination of Assignment

Ms. Bravard also contends that Barth Electric terminated her assignment because of her sexual harassment complaints. While termination from her assignment would undisputedly be an adverse employment action, there is insufficient evidence to support an inference of a causal link between Ms. Bravard's complaints and her termination. Relevant evidence of a causal link might include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assoc., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). "[T]he ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

Here, Ms. Bravard relies on suspicious timing and similarly situated comparator evidence to support her claim that Barth Electric terminated her assignment in retaliation for her sexual harassment complaint. Regarding timing, Ms. Bravard complained of

sexual harassment on October 27, 2023,[6] and her assignment was not terminated until three months later, on January 24, 2024.  This time gap, without more, is simply too attenuated to raise an inference of retaliatory intent.  *E.g.*, *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (three-month interval did not raise inference of retaliatory intent).  Ms. Bravard contends that, although her assignment was not terminated until January 2024, Mr. Smith began laying the groundwork for her termination on October 30, 2023, a mere three days after her sexual harassment complaint, when he emailed LHH and indicated that "[i]t may be time to start interviewing replacements" because "today may be [Ms. Bravard's] last day," citing the fact that Ms. Bravard had called off that day for car trouble after already having called off four other days in October and also arriving late to work another day that month.  Exh. I at BARTH-000465.  However, the evidence discloses that Mr. Smith informed LHH later that day that Barth Electric had actually decided to retain Ms. Bravard.  Thus, she suffered no employment consequences because of his email.

Moreover, the fact that Mr. Smith had previously raised with LHH his concerns regarding Ms. Bravard's poor attendance record in August 2023, which was prior to her sexual harassment complaint, dilutes the suspicious nature of the timing of his October email, especially in light of the fact that, in the two-month period since he had last

---

[6] Ms. Bravard contends that her latest complaint of sexual harassment would have been in December 2023, when she attempted to meet with Ms. Sawyer to discuss Mr. B.P.'s conduct. However, Ms. Bravard testified that in her email to Ms. Sawyer, she did not mention B.P. or specify the reason she wanted to meet and, when she followed up with Mr. Smith, she said only that she was trying to meet with Ms. Sawyer, not that she wanted to discuss B.P.  Bravard Dep. at 41. These generic requests for a meeting do not constitute statutorily protected activity.

24

contacted LHH about her attendance issues, she had arrived late at work on three occasions and had called off work on seven additional days.  To the extent the timing of Mr. Smith's October email has any relevance to whether he harbored retaliatory intent three months later, when he directed LHH to terminate Ms. Bravard's assignment, suspicious timing will "'rarely be sufficient in and of itself to create a triable issue.'" *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)).

The only other evidence Ms. Bravard adduces in support of her retaliatory termination claim is her testimony based on her own observations that two other Barth Electric employees, specifically Kimya Majors and Jared Phillips, "would come and go as they pleased, missed very extended times at work, and nothing ever happened." Bravard Dep. at 74.  Ms. Bravard has admitted that she does not know the "specifics" of Ms. Majors's attendance record, "when she had missed and whatnot," only that she knew that Ms. Majors "missed quite a bit" because when Ms. Majors was late or absent she had to fill in for her on the switchboard.  *Id.* at 74–75.  With regard to Mr. Phillips, Ms. Bravard testified that he "would leave just whenever and not come back until whenever." According to Ms. Bravard, he "would miss three, four days at a time," "come in at 10:00, 11:00 a.m., leave at 3:00, 2:00," and "[j]ust … do whatever he wanted and was never reprimanded for it."  *Id.* at 75.  However, when questioned further, Ms. Bravard admitted that she does not know any details regarding the circumstances of her co-workers' absences or whether either Ms. Majors or Mr. Phillips was ever disciplined for their attendance.  *Id.* at 74–75, 77.

25

In any event, Ms. Bravard has failed to establish that these employees are in fact similarly situated to her. Although similarly situated employees "need not be identical in every conceivable way," they must be "directly comparable" in "all material respects" to be considered similarly situated. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Generally, "[e]mployees are similarly situated if they 'dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Dunlevy v. Langfelder*, 52 F.4th 349, 353–54 (7th Cir. 2022) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)). Here, Ms. Bravard's briefing does not make clear what roles these employees held, who supervised them, or any other specifics surrounding the nature of their absences to permit the Court to determine whether Ms. Majors and Mr. Phillips are in fact similarly situated, and it is not the Court's "task … to scour the record in search of a genuine issue of triable fact." *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997) (quoting *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). Rather, "[w]e rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* For these reasons, we hold that Ms. Bravard has failed to adduce sufficient evidence from which a reasonable jury could conclude that Barth Electric terminated her assignment in retaliation for her complaints of sexual harassment.

## C.    Disability Discrimination Claim Under the ADA

We turn next to address Ms. Bravard's claim that Barth Electric discriminated against her because of her disability when it terminated her assignment after she missed

26

work while in the hospital receiving treatment for an asthma attack. The ADA prohibits employers from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). "To establish disability discrimination, [a plaintiff] must show all three of the following elements: (1) that [s]he is disabled within the meaning of the ADA, (2) that [s]he is qualified to perform the essential functions of [her] job either with or without reasonable accommodation, and (3) that [s]he suffered from an adverse employment action because of [her] disability." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). With regard to causation, the ADA's "'but for' inquiry" requires that "the plaintiff's disability be *a* reason for the challenged action." *Lewis v. Ind. Dep't of Transp.*, 173 F.4th 876, 882 (7th Cir. 2026) (citation modified); *see also Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) ("[A] plaintiff must show a genuine issue of material fact exists regarding whether [her] disability was the 'but for' reason for the adverse action, in this case termination.").

Even assuming that Ms. Bravard can establish the first two prongs of her disability discrimination claim, she has failed to establish the third, to wit, that but-for her disability, Barth Electric would not have terminated her assignment. According to Barth Electric, it terminated Ms. Bravard's assignment,[7] not because of her asthma but because of her ongoing attendance issues, culminating in a no call-no show on the morning of

---

[7] Barth Electric argues that, because LHH sent Ms. Barvard the termination email one hour before the end of her typical workday, it acted in contravention of Mr. Smith's instructions to notify her at "the end of the day," and thus, LHH must be deemed the decisionmaker. We are not persuaded by this argument. The evidence clearly establishes that Mr. Smith directed LHH to terminate Ms. Bravard's assignment that day and the fact that LHH may have done so slightly earlier than he intended does not shift the responsibility for the decision to LHH.

January 24, 2024, after having been a no call-no show two days earlier on January 22. The designated evidence supports Barth Electric's proffered nondiscriminatory reason for her termination. Ms. Bravard had been hospitalized on January 22 due to an asthma attack and reported that she had a follow-up appointment with a pulmonologist on January 23. Although Mr. Smith initially told LHH that Barth Electric would like to begin looking for a replacement for Ms. Bravard due to her no call-no show, once Mr. Smith was notified of the reason for her absence on the afternoon of January 22, he informed LHH that Ms. Bravard could return to work on January 24, as he was told she had been cleared to do. In other words, as soon as Mr. Smith learned that Ms. Bravard's absence was due to a complication with her asthma, he reversed course and permitted her to return to work without consequence.

When Ms. Bravard failed to show for work on January 24 and again did not notify Mr. Smith of the reason for her absence, Mr. Smith emailed LLH that morning and directed LHH to terminate her assignment "at the end of the day" because she had been a "no call-no show." Exh. I at BARTH-000454. Later that afternoon, Ms. Bravard contacted Mr. Smith and told him that she had had to return to the hospital. Upon hearing this news, Mr. Smith reached out to LHH to retract his termination directive, but learned that, in the interim, LHH had already informed Ms. Bravard that her assignment with Barth Electric was being terminated. LHH offered to email her again and instruct her to return to work the next day, but Mr. Smith declined, stating that, "bringing her back after telling her it was over may create more issues than it[']s worth." *Id.* at BARTH-000451.

28

Ms. Bravard has failed to present evidence from which a reasonable jury could conclude that but for her asthma, Barth Electric would have continued her assignment. It is well-established that "the ADA does not protect persons who have erratic or unexplained absences from work," *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 866 (7th Cir. 2017) (citing *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001)), although the Seventh Circuit has "not established a hard-and-fast rule that no absences from work need be tolerated." *Yellow Freight Sys.*, 253 F.3d at 949. Here, Ms. Bravard's attendance issues were well-documented. Mr. Smith raised concerns about her attendance with LHH as early as August 2023 and those issues continued throughout her employment. In the six months that she worked for Barth Electric, she missed a total of 20 days of work (only two of which appear to have been due to her asthma, on January 22 and 24) and was late to work on at least 10 other occasions. Although it is true, as Ms. Bravard argues, that she was never disciplined for her absences prior to her termination, concerns over her erratic attendance were brought to her attention on more than one occasion and she herself concedes that she was aware that her attendance issues had a "negative impact" on her employer and that at best "it wasn't positive, that's for sure." Bravard Dep. at 117–118.

The adduced evidence further establishes that when Mr. Smith initially notified LHH on January 22 (and again on January 24) to terminate Ms. Bravard's assignment and/or to begin looking for her replacement, he was unaware at either time that her no call-no show was related to her asthma; thus, he could not have been basing his termination decision on her disability. On both occasions, as soon as Mr. Smith learned

that her absence was related to her medical condition, he followed up with LHH to inform the staffing agency that he would retain Ms. Bravard. Based on this evidence, no reasonable jury could find that Mr. Smith's initial termination decisions were premised on his discriminatory animus.

Nor is there any evidence that Mr. Smith's decision not to reverse Ms. Bravard's termination on January 24, after learning that LHH had already informed her that she had been terminated, was based on her disability. Instead, his stated reason was his concern that bringing Ms. Bravard back after LHH had already informed her that she was terminated could "create issues." Exh. I at BARTH-000451. Ms. Bravard has put forth no evidence from which a reasonable jury could conclude that Mr. Smith's proffered explanation was dishonest and merely a pretext for discrimination. *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) ("Pretext means 'more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.'") (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). Although she contends that similarly situated employees without disabilities were treated more favorably, for the same reasons set forth above in relation to her retaliatory termination claim she has failed to establish that her proposed comparators are in fact similarly situated to her.

Viewing the evidence as a whole, we conclude that no reasonable jury could find that but-for her disability, Ms. Bravard would not have been terminated.

## III.    Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment [Dkt. 34] is <u>GRANTED</u>.  All other pending motions are <u>DENIED AS MOOT</u>.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date:        5/18/2026

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Andrew W. Gruber
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
andrew.gruber@dentons.com

Melissa B. Minix
Dentons Bingham Greenebaum LLP
melissa.minix@dentons.com

Brenly Lorraine Pereira
Biesecker Dutkanych & Macer
bpereira@bdlegal.com